Dear Mr. Lafser:
This letter is in answer to your request asking:
 "1. May the joint governing board of soil and water conservation districts transfer the duties of the treasurer of that board to the trustees of a subdistrict of those soil and water conservation districts?
 2. May monies collected pursuant to §§ 278.245 and 278.250, RSMo. Supp. 1977, be used to fund lobbying activities on behalf of the soil and water conservation subdistrict?
 3. May monies collected pursuant to §§ 278.245 and 278.250, RSMo. Supp. 1977, be returned to property owners when an originally planned watershed structure will no longer be constructed, a portion of the monies having been assessed to acquire easements of the structure; if monies may be returned, what procedures may be used, and more particularly, to whom may the money be returned?"
It is our view that the joint governing board may not transfer the treasurer's responsibility to the watershed subdistrict trustees.
The main responsibility of the treasurer of the joint governing board is to keep account of the monies that are credited to each watershed district, and to write checks for contracts that are let for improvements in the subdistricts.
The statutory framework is as follows:
Section 278.110, RSMo. 1969, states:
 "The state soil and water districts commission upon declaring the establishment of a soil and water district as provided in section 278.100 shall proceed to arrange in the following manner for the establishment of a board of soil and water district supervisors to act as a local governing body for such soil and water district. This board shall consist of five members. . .
* * *
 The board of soil and water supervisors shall elect a chairman from among themselves, and the county agricultural extension agent shall be secretary of the board."
Section 278.120, RSMo. 1969, states:
 "1. Any soil and water district organized under the provisions of this law shall be a body corporate and shall possess only such powers as herein provided, . . ."
Section 278.160, RSMo. 1969, states:
 "Subdistricts of a soil and water conservation district may be formed as provided in sections 278.160 to 278.300 for the purpose of carrying out watershed protection and flood prevention programs, for the prevention of floodwater and sediment damage and for furthering the conservation, development, utilization and disposal of water, and for increasing recreation and industrial development and for the development of agricultural water management, irrigation and drainage."
Section 278.220.1, RSMo. Supp. 1977, states in part:
 "If the proposed subdistrict lies in more than one soil and water conservation district, the petition [for establishment] may be presented to the board of soil and water district supervisors of any one of the districts, and the soil and water supervisors of all the districts shall act jointly as a board of soil and water district supervisors with respect to all matters concerning the subdistrict, including its formation. They shall organize as a single board for such purposes and shall designate the chairman, vice chairman, and secretary-treasurer to serve for terms of one year. After organizing, they may continue to meet as a single board for the purposes of governing the subdistrict or they may meet as individual county boards and act, individually, on the minutes of meetings of the trustees of the subdistrict, as specified in section 278.240. A subdistrict which lies in more than one soil and water conservation district shall be formed in the same manner and shall have the same powers and duties as a subdistrict formed in one soil and water conservation district."
Section 278.240, RSMo. Supp. 1977, states in part:
 "1. The board of soil and water conservation district supervisors of soil and water conservation district [sic] in which the subdistrict is formed shall be the governing body of the subdistrict. When a subdistrict lies in more than one soil and water conservation district, the combined boards of soil and water conservation district supervisors shall be the governing body.
 2. Five persons living within the subdistrict shall be elected to serve as trustees of the subdistrict. . . . The trustees shall elect one of their members as chairman and one of their members as secretary to serve for terms of two years. If the governing board so designates the trustees may act in all matters pertaining to the subdistrict, except those concerning formation, consolidation, expansion or disestablishment of the subdistrict. All official actions taken by the trustees, however, shall be subject to the ratification of a majority of the governing boards of the individual soil and water conservation districts from which the subdistrict was formed. No actions taken by the trustees shall become effective until ratification of a majority of the governing boards has taken place. At the next regular meetings following any meeting of the trustees, each governing board may place on their agenda for approval or disapproval the actions taken by the trustees. Failure to take action by any board shall be construed as disapproval of all actions taken by the trustees. . . . If the governing board shall decide to continue meeting as a single board for purposes of governing the subdistrict, the trustees shall serve as an advisory body only."
Section 278.250.5, RSMo. Supp. 1977, states:
 "5. The body having authority to levy taxes within the county shall levy the taxes provided in this law, and all officials charged with the duty of collecting taxes shall collect the taxes at the time and in the form and manner and with like interest and penalties as other taxes are collected; computation shall be made on the regular tax bills, and when collected shall pay the same to the subdistrict ordering its levy and collection or entitled to the same, and the payment of such collections shall be made monthly to the treasurer of the subdistrict. The proceeds shall be kept in a separate account by the treasurer of the subdistrict and identified by the official name of the subdistrict in which the levy was made. Expenditures from the fund shall be made on requisition of the chairman and secretary of the governing body or the subdistrict or, alternately, on requisition of the chairman of the governing body of the subdistrict and the chairman of the trustees of the subdistrict."
According to the facts that you have provided us, a joint governing board wishes to transfer all of its functions to the trustees of the subdistrict. Although § 278.240.2, RSMo. Supp. 1977, allows the joint governing board of the subdistrict to transfer some of its functions to the trustees of the subdistrict, there is no provision for abolishing the office of secretary-treasurer of the board of the subdistrict or of assigning the duties of the treasurer to the trustees of the subdistrict. The statutory scheme providing for a secretary-treasurer obviously does not contemplate the assignment of his duties to a board of five trustees. The statutes provide for a secretary-treasurer to sign checks and do not provide that all five trustees will sign checks and keep account of the funds of the subdistrict.
The treasurer of the joint governing board must therefore continue to perform the duties of the treasurer for the subdistrict.
With regard to question 2, concerning the use of watershed tax monies for lobbying, it is our opinion that tax monies may be used for lobbying in the Missouri general assembly by the watershed districts.
 "The powers of levee, dam, flood control, water control and conservancy districts are only those expressly granted to them by the legislature, plus those impliedly necessary to effectuate the grants of power and those necessary to function as an independent legal entity." 3 Antieau, Local Government Law § 30P.02 at 30P-8 (1977).
Sections 278.060 through 278.300, RSMo., do not specifically state whether watershed tax monies may be used for lobbying. Section 278.250.1, RSMo. Supp. 1977, states that watershed subdistricts:
 ". . . may levy an organization tax of not to exceed forty cents per one hundred dollars of assessed valuation of all real estate within the subdistrict, the proceeds of which may be used for organization and administration expenses of the subdistrict, the acquisition of real and personal property, including easements for rights-of-way, necessary to carry out the purposes of the subdistrict . . . ."
Section 278.120.1, RSMo. 1969, states:
 "Any soil and water district organized under the provisions of this law shall be a body corporate and shall possess only such powers as herein provided, but any such powers possessed by said body corporate shall be particularly limited by the following provisos. . . ."
None of the provisos mentioned in that or other sections relate to lobbying. Thus, for the subdistrict to have the power to lobby, the power must be found by implication in the language of the statute. The likely place to find such an implication would be to find that lobbying is an "organization" or "administrative" expense of the subdistrict.
Although there are no cases dealing with the power of bodies corporate, such as the soil and water districts here, to lobby, these entities are similar to municipal corporations in that municipal corporations also only have powers expressly or impliedly granted to them by the legislature. Therefore, the rules with regard to the power of municipal corporations to employ lobbyists should apply to bodies corporate such as the soil and water conservation subdistricts that are the subject of this inquiry.
We are enclosing herewith two opinions rendered by this department on similar questions. In Opinion No. 167, issued July 10, 1969, to Honorable Robert H. Branom, it is stated that public funds of a school district could be used to employ and compensate a person to take part in support of or opposition to pending legislation affecting the interests of the school districts. In Opinion Letter No. 71, February 4, 1975, to Honorable Fred Williams, it is stated that it is legal for the Mayor of the City of St. Louis to use a civil service employee to act as a lobbyist before the general assembly.
Support for the proposition that municipal corporations may employ lobbyists, despite the lack of an express allowance of that action in an enabling statute, may be found in the failure of the legislature to include an express provision prohibiting such lobbying activities in this statute. Such a provision could have been included in this statute as it was in § 162.011, RSMo. 1969, repealed in 1977. The following subsection had been attached to that statute enabling school boards of the state to form associations:
 "None of the funds of the association shall be used for salaries or expenses incurred for the purpose of influencing the passage or defeat of legislation before the general assembly."
While there is no state prohibition on using organizational tax money for lobbying purposes, there is a federal statute that may restrict the use of organizational tax monies for lobbying before the United States Congress. 18 U.S.C. § 1913 (1948) states:
 "No part of the money appropriated by an enactment of Congress shall, in the absence of express authorization by Congress, be used directly or indirectly to pay for any personal service, advertisement, telegram, telephone, letter, printed or written matter, or other device, intended or designed to influence in any manner a Member of Congress, to favor or oppose, by vote or otherwise, any legislation or appropriation by Congress, whether before or after the introduction of any bill or resolution proposing such legislation or appropriation. . . ."
Because enforcement of a federal statute would be involved with regard to lobbying before the United States Congress, this office suggests that the soil and water conservation districts contact the United States Attorney General for an interpretation of this statute, to see if it would apply to this situation.
Question 3 states:
 "May monies collected pursuant to §§ 278.245 and 278.250, RSMo. Supp. 1977, be returned to property owners when an originally planned watershed structure will no longer be constructed, a portion of the monies having been assessed to acquire easements for the structure; if monies may be returned, what procedures may be used, and more particularly, to whom may the money be returned?
Further communications to this office reveal that your concern is with the refund of organization tax monies collected pursuant to § 278.250, RSMo. Supp. 1977. It is our opinion that organization tax monies collected pursuant to this section may not be returned to the property owners.
We are enclosing herewith an opinion rendered by this office on a similar question. In Opinion Letter No. 150, issued September 6, 1978, to Honorable John E. Casey, it is stated that a tax collected by a special road district may not be returned by the trustee to the taxpayers.
Refund of taxes is a matter of legislative grace, and, absent a statute authorizing the refund of taxes, taxes may not be refunded to the taxpayer. Since no statutory provision authorizes the subdistricts to refund these organization taxes, it is our view that no refund of such taxes can be made by the subdistrict.
Very truly yours,
 John Ashcroft Attorney General
Enc: Op. No. 167 — 1969 Op. No. 71 — 1975 Op. No. 150 — 1978